**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VARSHA SHARMA, SHEETAL SHARMA, individual and on behalf of all others similarly situated,

Plaintiff,

v.

VW CREDIT, INC., dba AUDI FINANCIAL SERVICES,

Defendants.

Case No. **CV 11-08360 DDP (Ex)**

**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

[Docket No. 33]

Presently before the Court is the defendant VW Credit, Inc. ("VCI")'s Motion to Disqualify the plaintiffs' counsel, Brandon Block ("Block"). Having considered the parties' arguments, the Court adopts the following order.

**I. BACKGROUND**

Mr. Gaja Sharma leased a 2005 Audi A4 from a dealership in Los Angeles County for his daughter, plaintiff Varsha Sharma. (First Am. Compl. ¶ 8.) The dealership assigned the lease to VCI. (Id. ¶ 9.) After Mr. Sharma passed away on June 21, 2010, VCI repossessed the vehicle on November 8, 2010 and provided written notice of its

intent to sell the vehicle on November 12. (Id. ¶¶ 10, 14-15.)

The plaintiffs filed this putative class action alleging that VCI violated the Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code § 2981, et seq., by "fail[ing] to provide borrowers under conditional sales contracts with statutorily-mandated notice of their legal rights and obligations after repossession of vehicles." (Id. ¶¶ 1, 34–42.) The plaintiffs also allege that VCI's debt collection practices breached their underlying contract, (id. ¶¶ 43–49), and violated California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, et seq., (id. ¶¶ 50–60), and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., (id. ¶¶ 61–71.)

The plaintiffs' counsel, Block, worked as an associate attorney for VCI's current counsel Stroock & Stroock & Lavan LLP ("Stroock") from 1999 to 2003. (Declaration of Brandon Block ("Block Decl.") ¶ 2.) From 2001 to 2003, Block worked at Stroock's office in Los Angeles. (Id. ¶ 3; Declaration of Lisa M. Simonetti ("Simonetti Decl.") ¶ 2.) During those years, Block worked on three cases in which Stroock represented VCI: (1) Rickett v. Chase Manhattan Auto. Fin. Corp., No. 277380 (L.A. Cnty. Super. Ct. filed July 10, 2002); (2) Morrissey v. Coastal Auto Mart, Inc., No. DR010045 (Humboldt Cnty. Super. Ct. filed Jan. 18, 2001); and (3) Mendoza v. Volkswagen of Am., Inc., No. BC 284120 (L.A. Cnty. Super. Ct. filed Oct. 25, 2002). (Simonetti Decl. ¶ 2.)

After he left Stroock in 2003, Block worked until 2007 as an associate attorney for Buchalter Nemer, A Professional Corporation. (Block Decl. ¶ 6.) Since then he has worked independently at the Law Offices of Brandon A. Block, A Professional Corporation. (Id.

¶¶ 6,8.) Block has not represented VCI in either of those capacities. (Id. ¶ 6.)

On August 12, 2011, the plaintiffs, represented by Block, filed this putative class action against VCI in Los Angeles Superior Court. (Docket No. 1: Notice of Removal, Exh. A.) VCI, represented by Stroock, timely removed to this Court on October 7, 2011. (Id. ¶ 1.) On January 10, 2013, VCI filed a Motion to Disqualify Block as the plaintiffs' counsel. (Docket No. 33: Motion to Disqualify ("Motion").)

**II. LEGAL STANDARD**

Federal courts apply state law when they determine matters of attorney disqualification. In re Cnty. of L.A., 223 F.3d 990, 995 (9th Cir. 2000). Though the California State Bar's Rules of Professional Conduct do not set standards for disqualification in the courts, "courts analyzing questions of disqualification often look to the Rules of Professional Conduct for guidance." Kirk v. First Am. Title Ins. Co., 108 Cal. Rptr. 3d 620, 631 (Ct. App. 2010). Rule 3-310(E) provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Applying this rule, the California Supreme Court has said that "[w]here an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation." People ex rel. Dep't of Corps. v.

SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1146 (1999). Courts presume that the attorney had access to confidential information if the former client establishes "the requisite substantial relationship between the subjects of the prior and the current representations." Flatt v. Superior Court, 9 Cal. 4th 275, 283 (1994). "If a substantial relationship is established, . . . [t]he rights and interests of the former client will prevail. Conflict will be presumed; disqualification will be ordered." River W., Inc. v. Nickel, 234 Cal. Rptr. 33, 41 (Ct. App. 1987).

"However, it is not in the interests of justice to make the 'substantial relationship' rule so unyielding as to permit the former client to inexcusably postpone objections without penalty." Id. "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." Trust Corp. of Mont. v. Piper Aircraft Corp., 701 F.2d 85, 87 (9th Cir. 1983). "Therefore, a narrow exception should apply if the present client, by way of opposition, offers prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client." River W., 234 Cal. Rptr. at 41.

**III. DISCUSSION**

**A. Substantial Relationship**

The Court finds that a substantial relationship likely exists between the subjects of Block's current representation and his prior representations of VCI. While an associate at Stroock, Block represented VCI in Rickett, Morrissey, and Mendoza. In Rickett,

Block defended VCI from allegations that VCI failed to provide statutorily mandated post-repossession notice and that this failure prevented it from collecting any unpaid obligation. (Simonetti Decl. ¶ 3, Exhs. A, D.) VCI argues that it had a "direct relationship" with Block, who was "privy to [its] litigation and settlement philosophy and strategy." (Motion 7:9-11.) Block, however, argues that Rickett is not substantially related to this case because it involved the Vehicle Leasing Act, which has different notice requirements from the Rees-Levering Act. (Docket No. 34: Opposition to Motion to Disqualify ("Opposition") 19:9-18.) Despite Block's assertion, the Court finds that the underlying factual allegations are similar enough to justify finding a substantial relationship between the two representations.

**B. Unreasonable Delay and Resulting Prejudice**

Block, however, asserts that he has offered prima facie evidence of VCI's unreasonable delay and resulting prejudice to his clients. (Id. 25:14-15, 21-22). As explained below, the Court agrees.

**1. Unreasonable delay**

To determine whether a motion to disqualify has been timely made—that is, whether the movant unreasonably delayed—federal district courts have looked beyond the length of the delay. E.g., Miller v. Alagna, 138 F. Supp. 2d 1252, 1259 (C.D. Cal. 2000) (considering the number of attorney hours spent on the case during a six month delay in addition to the six month delay itself). "Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive." Emp'rs Ins. of Wausau v. Albert D. Seeno Constr. Co., 692 F. Supp. 1150,

1165 (N.D. Cal. 1988). Compare Piper Aircraft Corp., 701 F.2d at 87-88 (affirming the denial of a motion to disqualify after a thirty-month delay), with Openwave Sys. Inc. v. Myriad Fr. S.A.S., No. C 10-02805 WHA, 2011 WL 1225978, at *6-7 (N.D. Cal. Mar. 31, 2011) (denying a motion to disqualify after a four-month delay) and Skyy Spirits, LLC v. Rubyy, LLC, No. C 09-00646 WHA, 2009 WL 3762418, at *4 (N.D. Cal. Nov. 9, 2009) (denying a motion to disqualify after an eight-month delay).

i. Length of delay

Block asserts that VCI waited "almost one and a half years" to file its Motion to Disqualify since it knew of the conflict "upon its receipt of [the] lawsuit, and no later than October 7, 2011, when [it] filed its notice of removal in this case." (Opposition 25:10-14.) VCI was served the complaint and summons on September 7, 2011. (Notice of Removal ¶ 1.) VCI filed its Motion to Disqualify Block sixteen months later on January 10, 2013.

Though VCI does not dispute that it waited sixteen months, it argues that the "delay should not be measured by the number of months, but rather in terms of how those months were employed in preparing the case." (Docket No. 36: Reply in Support of Motion to Disqualify ("Reply") 8:10-11 (quoting Openwave Sys., 2011 WL 1225978, at *6).) VCI points out that the plaintiffs have not taken any depositions and neither party has filed a substantive motion. (Id. 9:6-7.) It concludes that this litigation "has remained relatively inactive" prior to the filing of its Motion. (Id. 8:9.) The Court disagrees.

In Openwave Systems Inc. v. Myriad France S.A.S., the court denied the defendant's motion to disqualify opposing counsel even

though it had waited four months to file its motion. 2011 WL 1225978, at *6-7. The court explained that during the four months the parties had "exchanged interrogatories, produced documents, submitted privilege logs, and conducted key depositions." Id. at *6. A discovery cut-off was also one month away. Id. Similarly, in Skyy Spirits, LLC v. Rubyy, LLC, the court denied the defendant's motion to disqualify after it waited eight months to file its motion. 2009 WL 3762418, at *4. There, the court explained that during the eight months "the case schedule has been moving ahead and the fact-discovery cutoff is seven weeks away." Id. at *3.

Sixteen months is twice the delay in Skyy Spirits and four times that in Openwave Systems. Despite shorter delays, the courts in those cases denied disqualification motions because the parties had used those months to advance the litigation. Here, Block has done the same. During the sixteen months, Block "assist[ed] in propounding written discovery to [VCI]; review[ed] [VCI's] discovery responses and document productions; and participate[d] in meet and confer efforts to resolve ongoing discovery disputes." (Block Decl. ¶ 8.) Furthermore, Block alleges that the plaintiffs are in "the midst of attempting to obtain key documents and information from [VCI] that [VCI] has unjustifiably refused to produce." (Opposition 26:5-7.) In sum, Block has used the sixteen months to advance the litigation. He has done so as the only attorney in his firm and as one of two attorneys representing the plaintiffs in this putative class action. (Block Decl. ¶ 8.)

VCI asserts, however, that its delay was not unreasonable "given the early procedural posture of this action." (Reply 8:17-18.) To determine whether a delay is unreasonable, courts may

consider "[t]he stage of litigation at which the disqualification motion is made." Liberty Nat'l Enters., L.P. v. Chi. Title Ins. Co., 123 Cal. Rptr. 3d 498, 504 (Ct. App. 2011). In this case, on April 19, 2012, the parties submitted motion and discovery schedules, which set the class certification deadline at March 1, 2013; the deadline for all other motions at February 28, 2014; and the discovery deadlines at dates in early 2014. (Docket No. 23: Joint Rule 26 Scheduling Report 9:12-14, 11:1-7.) This Court then continued the class certification deadline to June 30, 2013. (Docket No. 32.) VCI emphasizes that no trial date has been set. (Reply 8:17, 9:7.)

Though this litigation is far from trial and twelve months from the first discovery deadline, Block points out that the plaintiffs must file their class certification motion by June 30, 2013, which is now less than four months away. (Opposition 26:7-8.) Class certification is a crucial step for class actions. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001) (describing the burden of proof required for a class certification motion and the "rigorous analysis" that trial courts must undertake to determine whether that burden has been met). While non-class action cases may anchor their analysis of unreasonable delay by referencing a trial date, e.g., Piper Aircraft Corp., 701 F.2d at 88 (refusing to tolerate a delay where "disqualification would certainly cast a shadow over the trial"), VCI's emphasis on the lack of a scheduled trial date is misplaced because it does not account for the class certification proceedings.

ii. Reason for delay

VCI argues that its delay was reasonable because during the sixteen months it was attempting to privately resolve the dispute. (See Reply 9:19-20.) It asserts that it filed its Motion "after significant and thoughtful deliberation and only after making several requests that Block remove himself from the case." (Id. 8:5-6.) Block, however, asserts that VCI "has known for a long time that [he] would not voluntarily recuse himself" and that VCI had no "reasonable reason" for not filing its Motion earlier. (Opposition 26:21-23.)

VCI's argument is not persuasive. Similar arguments were made in Openwave Systems and Skyy Spirits. In Openwave Systems, the court concluded that the defendant could offer "no satisfactory explanation for [its] lengthy delay" even though the defendant notified the plaintiff's firm of the conflict within days of discovering it. 2011 WL 1225978, at *6. The court emphasized that it had not heard of the conflict until a discovery hearing three and a half months later. Id. In Skyy Spirits, the defendant notified the plaintiff within three months of discovering the conflict and argued that it "would have been imprudent and counterproductive to file a disqualification motion while counsel were initially focused on mediating a resolution and pursuing an agreement to settle the dispute altogether." 2009 WL 3762418, at *4 (internal quotation marks omitted). The court disagreed, explaining that it was "inconceivable that [the defendant] would have wanted to engage in settlement discussions while [the plaintiff] was represented by [the tainted attorney]—it would have been both prudent and productive to file a motion to disqualify as soon as possible." Id.

The same reasoning applies here. Stroock first raised the issue with Block on January 9, 2012, four months after VCI was served the complaint and summons. (Declaration of Brian C. Frontino ("Frontino Decl.") ¶ 2.) Though Block indicated that "he was not inclined to withdraw as counsel," Stroock did not raise the issue with the court three and a half months later at the Rule 26 scheduling conference on April 26. (Id. ¶¶ 2-3.) It did not do so because it "still was in the process of meeting and conferring with Mr. Block to resolve the issue informally and did not want to prematurely involve the Court." (Id. ¶ 3.) After seven and a half months of failing to informally resolve the dispute, Stroock sent a letter to Block on August 28 demanding his withdrawal. (Id. ¶ 4, Exh. A.) Block responded with a refusal letter on September 4. (Block Decl. ¶ 11, Exh. 1.) Stroock and Block then spoke on September 19 to discuss, among other things, Stroock's Motion to Disqualify. (Frontino Decl. ¶ 5.) Stroock filed the Motion four months later on January 10, 2013. (Id. ¶ 6.) In sum, Stroock spent twelve months attempting to privately resolve the dispute even though Block had indicated from the beginning of the case that he would not withdraw.

Stroock asserts that its client "should not be punished for going to great lengths to resolve this serious issue informally." (Reply 9:19-20.) VCI faced no prejudice by filing its Motion earlier. Its delay, however, ignored the consequences potentially imposed on the plaintiffs. Further, disqualification here was a black and white issue. There does not appear to be any middle ground that would explain VCI's delay. When "the delay [is] so unreasonable as to amount to an implied waiver, the interests of

the nonmoving client should certainly be taken into account." Liberty Nat'l Enters., 123 Cal. Rptr. 3d at 505.

Accordingly, the Court finds that VCI has offered no satisfactory explanation for its delay,[1] and it now turns to consider whether the delay will prejudice the plaintiffs.

**2. Resulting Prejudice**

Block argues that his clients "will be unfairly and majorly prejudiced if the Court grants the motion at this juncture." (Opposition 26:9-10.) He asserts that "[a]s one half of the legal team for plaintiffs and the putative class, [he] has invested substantial time and effort on this complex class action to . . . research and develop the factual and legal bases for plaintiffs' claims; [and] gain a strong and thorough understanding of the legal and factual predicates for [VCI's] defenses." (Id. at 25:23-28.) VCI, on the other hand, asserts that "any limited prejudice Plaintiffs may face is simply too small to overcome the significant threat VCI faces by Block's continued violation of ethical rules." (Reply 9:17-19.)

The Court finds that the Motion to Disqualify Block, if granted, would prejudice the plaintiffs. "[M]otions to disqualify should be promptly made before the parties are invested substantially in their litigation line-ups." Openwave Sys., 2011 WL 1225978, at *7. In Openwave Systems, the court concluded that

[1] Block argues that the delay may indicate "that [VCI] did not deem [the] alleged breach of confidentiality serious or substantial" and "that the motion is a tactical device." (Opposition 24: 17-18, 20-21.) The Court need not consider these arguments because VCI bears the burden of justifying its delay. See River W., 234 Cal. Rptr. at 41; Miller, 138 F. Supp. 2d at 1259.

disqualification would prejudice the plaintiff because the plaintiff's firm had "put time and effort into negotiating [a] settlement and developed a strong understanding of the facts at hand." Id. at *6. Similarly, in Skyy Spirits, the court explained that disqualifying the plaintiff's counsel would prejudice the plaintiff because "substantial work has gone in to this case and the discovery deadline . . . is fast approaching." 2009 WL 3762418, at *4. In Sharp v. Next Entertainment, Inc., 78 Cal. Rptr. 3d 37 (Ct. App. 2008), the court found prejudice where a team of attorneys and law clerks at the plaintiffs' firm had performed a significant amount of work over a seven month period prior to class certification. Id. at 46, 48. The court explained that "[d]isqualification of the [plaintiffs'] firm may impose a significant hardship on plaintiffs, who will bear the burden of finding replacement counsel with the skills and knowledge of [their] firm." Id. at 56.

Here, Block's disqualification may impose a significant hardship on the plaintiffs who would bear the burden of finding a replacement. The sixteen month delay exacerbates that hardship. During those months, Block has advanced the litigation to the brink of class certification.

**IV. CONCLUSION**

"Ultimately, disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility." SpeeDee Oil Change Sys., 20 Cal. 4th at 1145. This case demonstrates that conflict. After considering the opposing

arguments, the Court finds that Block has demonstrated evidence of unreasonable delay and resulting prejudice.

Accordingly, VCI's Motion to Disqualify Block is DENIED.

IT IS SO ORDERED.

Dated: March 20, 2013

DEAN D. PREGERSON
United States District Judge