O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARSHA SHARMA, SHEETAL SHARMA, individual and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>VW CREDIT, INC., dba AUDI FINANCIAL SERVICES,<br><br>        Defendants.<br>_____ | Case No. **CV 11-08360 DDP (Ex)**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**<br><br>[Docket No. 33] |

        Presently before the Court is the defendant VW Credit, Inc. ("VCI")'s Motion to Disqualify the plaintiffs' counsel, Brandon Block ("Block"). Having considered the parties' arguments, the Court adopts the following order.

**I. BACKGROUND**

        Mr. Gaja Sharma leased a 2005 Audi A4 from a dealership in Los Angeles County for his daughter, plaintiff Varsha Sharma. (First Am. Compl. ¶ 8.) The dealership assigned the lease to VCI. (Id. ¶ 9.) After Mr. Sharma passed away on June 21, 2010, VCI repossessed the vehicle on November 8, 2010 and provided written notice of its

1 | intent to sell the vehicle on November 12. (Id. ¶¶ 10, 14-15.)

2 | The plaintiffs filed this putative class action alleging that

3 | VCI violated the Rees-Levering Automobile Sales Finance Act, Cal.

4 | Civ. Code § 2981, et seq., by "fail[ing] to provide borrowers under

5 | conditional sales contracts with statutorily-mandated notice of

6 | their legal rights and obligations after repossession of vehicles."

7 | (Id. ¶¶ 1, 34-42.) The plaintiffs also allege that VCI's debt

8 | collection practices breached their underlying contract, (id. ¶¶

9 | 43-49), and violated California's Rosenthal Fair Debt Collection

10 | Practices Act, Cal. Civ. Code § 1788, et seq., (id. ¶¶ 50-60), and

11 | Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.,

12 | (id. ¶¶ 61-71.)

13 | The plaintiffs' counsel, Block, worked as an associate

14 | attorney for VCI's current counsel Stroock & Stroock & Lavan LLP

15 | ("Stroock") from 1999 to 2003. (Declaration of Brandon Block

16 | ("Block Decl.") ¶ 2.) From 2001 to 2003, Block worked at Stroock's

17 | office in Los Angeles. (Id. ¶ 3; Declaration of Lisa M. Simonetti

18 | ("Simonetti Decl.") ¶ 2.) During those years, Block worked on three

19 | cases in which Stroock represented VCI: (1) Rickett v. Chase

20 | Manhattan Auto. Fin. Corp., No. 277380 (L.A. Cnty. Super. Ct. filed

21 | July 10, 2002); (2) Morrissey v. Coastal Auto Mart, Inc., No.

22 | DR010045 (Humboldt Cnty. Super. Ct. filed Jan. 18, 2001); and (3)

23 | Mendoza v. Volkswagen of Am., Inc., No. BC 284120 (L.A. Cnty.

24 | Super. Ct. filed Oct. 25, 2002). (Simonetti Decl. ¶ 2.)

25 | After he left Stroock in 2003, Block worked until 2007 as an

26 | associate attorney for Buchalter Nemer, A Professional Corporation.

27 | (Block Decl. ¶ 6.) Since then he has worked independently at the

28 | Law Offices of Brandon A. Block, A Professional Corporation. (Id.

1  ¶¶ 6,8.) Block has not represented VCI in either of those

2  capacities. (Id. ¶ 6.)

3       On August 12, 2011, the plaintiffs, represented by Block,

4  filed this putative class action against VCI in Los Angeles

5  Superior Court. (Docket No. 1: Notice of Removal, Exh. A.) VCI,

6  represented by Stroock, timely removed to this Court on October 7,

7  2011. (Id. ¶ 1.) On January 10, 2013, VCI filed a Motion to

8  Disqualify Block as the plaintiffs' counsel. (Docket No. 33: Motion

9  to Disqualify ("Motion").)

10  **II. LEGAL STANDARD**

11       Federal courts apply state law when they determine matters of

12  attorney disqualification. In re Cnty. of L.A., 223 F.3d 990, 995

13  (9th Cir. 2000). Though the California State Bar's Rules of

14  Professional Conduct do not set standards for disqualification in

15  the courts, "courts analyzing questions of disqualification often

16  look to the Rules of Professional Conduct for guidance." Kirk v.

17  First Am. Title Ins. Co., 108 Cal. Rptr. 3d 620, 631 (Ct. App.

18  2010). Rule 3-310(E) provides that "[a] member shall not, without

19  the informed written consent of the client or former client, accept

20  employment adverse to the client or former client where, by reason

21  of the representation of the client or former client, the member

22  has obtained confidential information material to the employment."

23       Applying this rule, the California Supreme Court has said that

24  "[w]here an attorney successively represents clients with adverse

25  interests, and where the subjects of the two representations are

26  substantially related, the need to protect the first client's

27  confidential information requires that the attorney be disqualified

28  from the second representation." People ex rel. Dep't of Corps. v.

3

1   <u>SpeeDee Oil Change Sys., Inc.</u>, 20 Cal. 4th 1135, 1146 (1999).

2   Courts presume that the attorney had access to confidential

3   information if the former client establishes "the requisite

4   substantial relationship between the subjects of the prior and the

5   current representations." <u>Flatt v. Superior Court</u>, 9 Cal. 4th 275,

6   283 (1994). "If a substantial relationship is established, . . .

7   [t]he rights and interests of the former client will prevail.

8   Conflict will be presumed; disqualification will be ordered." <u>River</u>

9   <u>W., Inc. v. Nickel</u>, 234 Cal. Rptr. 33, 41 (Ct. App. 1987).

10       "However, it is not in the interests of justice to make the

11   'substantial relationship' rule <u>so unyielding</u> as to permit the

12   former client to inexcusably postpone objections without penalty."

13   <u>Id.</u> "It is well settled that a former client who is entitled to

14   object to an attorney representing an opposing party on the ground

15   of conflict of interest but who knowingly refrains from asserting

16   it promptly is deemed to have waived that right." <u>Trust Corp. of</u>

17   <u>Mont. v. Piper Aircraft Corp.</u>, 701 F.2d 85, 87 (9th Cir. 1983).

18   "Therefore, a narrow exception should apply if the present client,

19   by way of opposition, offers prima facie evidence of an

20   unreasonable delay by the former client in making the motion and

21   resulting prejudice to the current client." <u>River W.</u>, 234 Cal.

22   Rptr. at 41.

23   **III. DISCUSSION**

24       **A. Substantial Relationship**

25       The Court finds that a substantial relationship likely exists

26   between the subjects of Block's current representation and his

27   prior representations of VCI. While an associate at Stroock, Block

28   represented VCI in <u>Rickett</u>, <u>Morrissey</u>, and <u>Mendoza</u>. In <u>Rickett</u>,

1  Block defended VCI from allegations that VCI failed to provide

2  statutorily mandated post-repossession notice and that this failure

3  prevented it from collecting any unpaid obligation. (Simonetti

4  Decl. ¶ 3, Exhs. A, D.) VCI argues that it had a "direct

5  relationship" with Block, who was "privy to [its] litigation and

6  settlement philosophy and strategy." (Motion 7:9-11.) Block,

7  however, argues that <u>Rickett</u> is not substantially related to this

8  case because it involved the Vehicle Leasing Act, which has

9  different notice requirements from the Rees-Levering Act. (Docket

10 No. 34: Opposition to Motion to Disqualify ("Opposition") 19:9-18.)

11 Despite Block's assertion, the Court finds that the underlying

12 factual allegations are similar enough to justify finding a

13 substantial relationship between the two representations.

14     **B. Unreasonable Delay and Resulting Prejudice**

15     Block, however, asserts that he has offered prima facie

16 evidence of VCI's unreasonable delay and resulting prejudice to his

17 clients. (<u>Id.</u> 25:14-15, 21-22). As explained below, the Court

18 agrees.

19          **1. Unreasonable delay**

20     To determine whether a motion to disqualify has been <u>timely</u>

21 made—that is, whether the movant unreasonably delayed—federal

22 district courts have looked beyond the length of the delay. <u>E.g.</u>,

23 <u>Miller v. Alagna</u>, 138 F. Supp. 2d 1252, 1259 (C.D. Cal. 2000)

24 (considering the number of attorney hours spent on the case during

25 a six month delay in addition to the six month delay itself).

26 "Although the length of the delay in bringing a motion to

27 disqualify is obviously important, it is not dispositive." <u>Emp'rs</u>

28 <u>Ins. of Wausau v. Albert D. Seeno Constr. Co.</u>, 692 F. Supp. 1150,

1    1165 (N.D. Cal. 1988). Compare Piper Aircraft Corp., 701 F.2d at

2    87-88 (affirming the denial of a motion to disqualify after a

3    thirty-month delay), with Openwave Sys. Inc. v. Myriad Fr. S.A.S.,

4    No. C 10-02805 WHA, 2011 WL 1225978, at *6-7 (N.D. Cal. Mar. 31,

5    2011) (denying a motion to disqualify after a four-month delay) and

6    Skyy Spirits, LLC v. Rubyy, LLC, No. C 09-00646 WHA, 2009 WL

7    3762418, at *4 (N.D. Cal. Nov. 9, 2009) (denying a motion to

8    disqualify after an eight-month delay).

9                        i. Length of delay

10       Block asserts that VCI waited "almost one and a half years" to

11   file its Motion to Disqualify since it knew of the conflict "upon

12   its receipt of [the] lawsuit, and no later than October 7, 2011,

13   when [it] filed its notice of removal in this case." (Opposition

14   25:10-14.) VCI was served the complaint and summons on September 7,

15   2011. (Notice of Removal ¶ 1.) VCI filed its Motion to Disqualify

16   Block sixteen months later on January 10, 2013.

17       Though VCI does not dispute that it waited sixteen months, it

18   argues that the "delay should not be measured by the number of

19   months, but rather in terms of how those months were employed in

20   preparing the case." (Docket No. 36: Reply in Support of Motion to

21   Disqualify ("Reply") 8:10-11 (quoting Openwave Sys., 2011 WL

22   1225978, at *6).) VCI points out that the plaintiffs have not taken

23   any depositions and neither party has filed a substantive motion.

24   (Id. 9:6-7.) It concludes that this litigation "has remained

25   relatively inactive" prior to the filing of its Motion. (Id. 8:9.)

26   The Court disagrees.

27       In Openwave Systems Inc. v. Myriad France S.A.S., the court

28   denied the defendant's motion to disqualify opposing counsel even

6

1  though it had waited four months to file its motion. 2011 WL

2  1225978, at *6-7. The court explained that during the four months

3  the parties had "exchanged interrogatories, produced documents,

4  submitted privilege logs, and conducted key depositions." Id. at

5  *6. A discovery cut-off was also one month away. Id. Similarly, in

6  Skyy Spirits, LLC v. Rubyy, LLC, the court denied the defendant's

7  motion to disqualify after it waited eight months to file its

8  motion. 2009 WL 3762418, at *4. There, the court explained that

9  during the eight months "the case schedule has been moving ahead

10 and the fact-discovery cutoff is seven weeks away." Id. at *3.

11      Sixteen months is twice the delay in Skyy Spirits and four

12 times that in Openwave Systems. Despite shorter delays, the courts

13 in those cases denied disqualification motions because the parties

14 had used those months to advance the litigation. Here, Block has

15 done the same. During the sixteen months, Block "assist[ed] in

16 propounding written discovery to [VCI]; review[ed] [VCI's]

17 discovery responses and document productions; and participate[d] in

18 meet and confer efforts to resolve ongoing discovery disputes."

19 (Block Decl. ¶ 8.) Furthermore, Block alleges that the plaintiffs

20 are in "the midst of attempting to obtain key documents and

21 information from [VCI] that [VCI] has unjustifiably refused to

22 produce." (Opposition 26:5-7.) In sum, Block has used the sixteen

23 months to advance the litigation. He has done so as the only

24 attorney in his firm and as one of two attorneys representing the

25 plaintiffs in this putative class action. (Block Decl. ¶ 8.)

26      VCI asserts, however, that its delay was not unreasonable

27 "given the early procedural posture of this action." (Reply 8:17-

28 18.) To determine whether a delay is unreasonable, courts may

7

1  consider "[t]he stage of litigation at which the disqualification

2  motion is made." Liberty Nat'l Enters., L.P. v. Chi. Title Ins.

3  Co., 123 Cal. Rptr. 3d 498, 504 (Ct. App. 2011). In this case, on

4  April 19, 2012, the parties submitted motion and discovery

5  schedules, which set the class certification deadline at March 1,

6  2013; the deadline for all other motions at February 28, 2014; and

7  the discovery deadlines at dates in early 2014. (Docket No. 23:

8  Joint Rule 26 Scheduling Report 9:12-14, 11:1-7.) This Court then

9  continued the class certification deadline to June 30, 2013.

10  (Docket No. 32.) VCI emphasizes that no trial date has been set.

11  (Reply 8:17, 9:7.)

12      Though this litigation is far from trial and twelve months

13  from the first discovery deadline, Block points out that the

14  plaintiffs must file their class certification motion by June 30,

15  2013, which is now less than four months away. (Opposition 26:7-8.)

16  Class certification is a crucial step for class actions. See Zinser

17  v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.

18  2001) (describing the burden of proof required for a class

19  certification motion and the "rigorous analysis" that trial courts

20  must undertake to determine whether that burden has been met).

21  While non-class action cases may anchor their analysis of

22  unreasonable delay by referencing a trial date, e.g., Piper

23  Aircraft Corp., 701 F.2d at 88 (refusing to tolerate a delay where

24  "disqualification would certainly cast a shadow over the trial"),

25  VCI's emphasis on the lack of a scheduled trial date is misplaced

26  because it does not account for the class certification

27  proceedings.

28          ii. Reason for delay

8

1    VCI argues that its delay was reasonable because during the

2  sixteen months it was attempting to privately resolve the dispute.

3  (See Reply 9:19-20.) It asserts that it filed its Motion "after

4  significant and thoughtful deliberation and only after making

5  several requests that Block remove himself from the case." (Id.

6  8:5-6.) Block, however, asserts that VCI "has known for a long time

7  that [he] would not voluntarily recuse himself" and that VCI had no

8  "reasonable reason" for not filing its Motion earlier. (Opposition

9  26:21-23.)

10    VCI's argument is not persuasive. Similar arguments were made

11  in Openwave Systems and Skyy Spirits. In Openwave Systems, the

12  court concluded that the defendant could offer "no satisfactory

13  explanation for [its] lengthy delay" even though the defendant

14  notified the plaintiff's firm of the conflict within days of

15  discovering it. 2011 WL 1225978, at *6. The court emphasized that

16  it had not heard of the conflict until a discovery hearing three

17  and a half months later. Id. In Skyy Spirits, the defendant

18  notified the plaintiff within three months of discovering the

19  conflict and argued that it "would have been imprudent and

20  counterproductive to file a disqualification motion while counsel

21  were initially focused on mediating a resolution and pursuing an

22  agreement to settle the dispute altogether." 2009 WL 3762418, at *4

23  (internal quotation marks omitted). The court disagreed, explaining

24  that it was "inconceivable that [the defendant] would have wanted

25  to engage in settlement discussions while [the plaintiff] was

26  represented by [the tainted attorney]—it would have been both

27  prudent and productive to file a motion to disqualify as soon as

28  possible." Id.

1      The same reasoning applies here. Stroock first raised the

2  issue with Block on January 9, 2012, four months after VCI was

3  served the complaint and summons. (Declaration of Brian C. Frontino

4  ("Frontino Decl.") ¶ 2.) Though Block indicated that "he was not

5  inclined to withdraw as counsel," Stroock did not raise the issue

6  with the court three and a half months later at the Rule 26

7  scheduling conference on April 26. (Id. ¶¶ 2-3.) It did not do so

8  because it "still was in the process of meeting and conferring with

9  Mr. Block to resolve the issue informally and did not want to

10 prematurely involve the Court." (Id. ¶ 3.) After seven and a half

11 months of failing to informally resolve the dispute, Stroock sent a

12 letter to Block on August 28 demanding his withdrawal. (Id. ¶ 4,

13 Exh. A.) Block responded with a refusal letter on September 4.

14 (Block Decl. ¶ 11, Exh. 1.) Stroock and Block then spoke on

15 September 19 to discuss, among other things, Stroock's Motion to

16 Disqualify. (Frontino Decl. ¶ 5.) Stroock filed the Motion four

17 months later on January 10, 2013. (Id. ¶ 6.) In sum, Stroock spent

18 twelve months attempting to privately resolve the dispute even

19 though Block had indicated from the beginning of the case that he

20 would not withdraw.

21     Stroock asserts that its client "should not be punished for

22 going to great lengths to resolve this serious issue informally."

23 (Reply 9:19-20.) VCI faced no prejudice by filing its Motion

24 earlier. Its delay, however, ignored the consequences potentially

25 imposed on the plaintiffs. Further, disqualification here was a

26 black and white issue. There does not appear to be any middle

27 ground that would explain VCI's delay. When "the delay [is] so

28 unreasonable as to amount to an implied waiver, the interests of

10

1  the nonmoving client should certainly be taken into account."

2  Liberty Nat'l Enters., 123 Cal. Rptr. 3d at 505.

3      Accordingly, the Court finds that VCI has offered no

4  satisfactory explanation for its delay,[1] and it now turns to

5  consider whether the delay will prejudice the plaintiffs.

6              **2. Resulting Prejudice**

7      Block argues that his clients "will be unfairly and majorly

8  prejudiced if the Court grants the motion at this juncture."

9  (Opposition 26:9-10.) He asserts that "[a]s one half of the legal

10  team for plaintiffs and the putative class, [he] has invested

11  substantial time and effort on this complex class action to . . .

12  research and develop the factual and legal bases for plaintiffs'

13  claims; [and] gain a strong and thorough understanding of the legal

14  and factual predicates for [VCI's] defenses." (Id. at 25:23-28.)

15  VCI, on the other hand, asserts that "any limited prejudice

16  Plaintiffs may face is simply too small to overcome the significant

17  threat VCI faces by Block's continued violation of ethical rules."

18  (Reply 9:17-19.)

19      The Court finds that the Motion to Disqualify Block, if

20  granted, would prejudice the plaintiffs. "[M]otions to disqualify

21  should be promptly made before the parties are invested

22  substantially in their litigation line-ups." Openwave Sys., 2011 WL

23  1225978, at *7. In Openwave Systems, the court concluded that

---

24  [1] Block argues that the delay may indicate "that [VCI] did not deem [the]

25  alleged breach of confidentiality serious or substantial" and "that the motion

26  is a tactical device." (Opposition 24: 17-18, 20-21.) The Court need not

27  consider these arguments because VCI bears the burden of justifying its delay.

28  See River W., 234 Cal. Rptr. at 41; Miller, 138 F. Supp. 2d at 1259.

1  disqualification would prejudice the plaintiff because the

2  plaintiff's firm had "put time and effort into negotiating [a]

3  settlement and developed a strong understanding of the facts at

4  hand." Id. at *6. Similarly, in Skyy Spirits, the court explained

5  that disqualifying the plaintiff's counsel would prejudice the

6  plaintiff because "substantial work has gone in to this case and

7  the discovery deadline . . . is fast approaching." 2009 WL 3762418,

8  at *4. In Sharp v. Next Entertainment, Inc., 78 Cal. Rptr. 3d 37

9  (Ct. App. 2008), the court found prejudice where a team of

10  attorneys and law clerks at the plaintiffs' firm had performed a

11  significant amount of work over a seven month period prior to class

12  certification. Id. at 46, 48. The court explained that

13  "[d]isqualification of the [plaintiffs'] firm may impose a

14  significant hardship on plaintiffs, who will bear the burden of

15  finding replacement counsel with the skills and knowledge of

16  [their] firm." Id. at 56.

17       Here, Block's disqualification may impose a significant

18  hardship on the plaintiffs who would bear the burden of finding a

19  replacement. The sixteen month delay exacerbates that hardship.

20  During those months, Block has advanced the litigation to the brink

21  of class certification.

22  **IV. CONCLUSION**

23       "Ultimately, disqualification motions involve a conflict

24  between the clients' right to counsel of their choice and the need

25  to maintain ethical standards of professional responsibility."

26  SpeeDee Oil Change Sys., 20 Cal. 4th at 1145. This case

27  demonstrates that conflict. After considering the opposing

28

12

1  arguments, the Court finds that Block has demonstrated evidence of

2  unreasonable delay and resulting prejudice.

3      Accordingly, VCI's Motion to Disqualify Block is DENIED.

4

5

6  IT IS SO ORDERED.

7

8

9  Dated: March 20, 2013

                                 DEAN D. PREGERSON
10                               United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13