TRUEBLOOD LAW FIRM
Alexander B. Trueblood (Bar No. 150897)
10940 Wilshire Blvd., Suite 1600
Los Angeles, CA  90024
Telephone:  (310) 443-4139
Facsimile:  (310) 943-2255

LAW OFFICES OF BRANDON A. BLOCK, APC
Brandon A. Block (State Bar No. 215888)
433 North Camden Drive, Suite 600
Beverly Hills, California 90210
Telephone: (310) 887-1440
Facsimile: (310) 496-1420

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARSHA SHARMA, and SHEETAL SHARMA, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>VW CREDIT, INC., dba Audi Financial Services, and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No: CV 11-08360-DSP (Ex*)<br><br>**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S FIRST SET OF DOCUMENT DEMANDS AND INTERROGATORIES**<br><br>Date:   May 10, 2013<br>Time:  9:30 a.m.<br>Place:  Courtroom 20, Spring Street<br><br>Discovery Cutoff:  None<br>Class Cert. Cutoff:  June 30, 2013<br>Pre Trial Conf.:  None<br><br>Trial Date:  None |

# TABLE OF CONTENTS

I. PLAINTIFF'S INTRODUCTORY STATEMENT…………………………..1

A.    Factual Background…………………………………………………1

B.    Present Motion to Compel Further Responses to Document Demands…...3

II. DEFENDANT'S INTRODUCTORY STATEMENT………………………..4

A.    Factual Background…………………………………………………4

B.    Discovery to Date……………………………………………………6

III. DISPUTED DISCOVERY AND PARTIES' CONTENTIONS……………..7

First Set of Document Demands..............................................................7

First Set of Special Interrogatories...........................................................23

Pursuant to Local Rule 37-2, the parties hereby submit this Joint Stipulation regarding Plaintiff's Motion to Compel Further Responses to Plaintiffs' First Set of Document Demands and First Set of Interrogatories.

## I.  PLAINTIFF'S INTRODUCTORY STATEMENT

A.    Factual Background

Plaintiff Varsha Sharma brings this class action against defendant VW Credit, Inc. (aka VCI), an automobile lender, to remedy VCI's violations of the consumer protection laws in connection with the repossession and sale of automobiles.  In particular, VCI fails to comply with the post-repossession notice provisions of California's Rees-Levering Automobile Sales and Finance Act (Rees-Levering Act), which has been an area of strict compliance with the law for over 50 years.  The Rees-Levering Act mandates that a post-repossession notice contain nine detailed disclosures.  Civil Code § 2983.2(a).  If even one disclosure is missing or incomplete, or if the consumer has to resort to calling the lender to determine the mandated information, the lender is barred from collecting a deficiency balance (i.e. the debt remaining after the vehicle is sold and the auction proceeds are credited to the consumer's account balance).  Civil Code § 2983.2(a); Juarez v. Arcadia Financial, Ltd., 152 Cal.App.4th 889 (2007). As stated by the California Supreme Court, "[T]he rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." Bank of America v. Lallana, 19 Cal. 4th 203, 215 (1998).

In this case, Gaja Sharma, the father of the class representatives, leased a vehicle for personal and family use.  When his lease ended, he decided to purchase the vehicle.  The contract was financed by VCI.

Gaja Sharma died while he still owned the vehicle, and his interest in the vehicle passed to his family, including his children, the plaintiffs Varsha and

Sheetal Sharma.  The contract provides that "The duties and benefits of this Loan Agreement shall bind and benefit the successors and assigns of me and you."  VCI was sent the death certificate.  By letter dated September 8, 2010, VCI acknowledged receiving the death certificate, and responded that Mr. Sharma's estate would have "90 days", i.e. until December 8, 2010, to choose to either surrender the Vehicle, pay off the conditional sale contract balance, or transfer the loan payment obligations to another person.  Varsha Sharma continued making monthly payments, and sent VCI a November 1, 2010 letter stating that she elected VCI's third option, i.e. transfer of the vehicle and loan obligations to Mr. Gaja's heirs.  However, VCI ignored its own policy and its letter, and suddenly repossessed the vehicle before the 90 days was up, on November 8, 2010.

VCI then sent out its post-repossession notice, addressed to "Estate of Gaja Sharma."  The notice was woefully defective, containing at least ten violations of Civil Code § 2983.2(a).  Complaint, ¶ 20(a) – (j).  Since this was a form notice sent to all other consumers with repossessions, this case is brought as a class action. VCI sold the Sharma's vehicle, and attempted to collect a deficiency balance from the two class representatives.

VCI's primary defense appears to be its contention that the court in a previous class action for Rees-Levering Act post-repossession notice violations, Okudan v. VW Credit, Inc., allegedly determined that the VCI's notice in this case was compliant.  This is incorrect. The violations in Okudan were different from this action, the class definitions do not overlap at all (the notice at issue in this case was actually issued *after* the class end date in Okudan). The Okudan court merely approved the class settlement in that case as fair and reasonable, and in doing so noted that the class end date was determined by the date VCI issued its new post-repossession notice – the one plaintiffs here contend is non-compliant.  The Okudan court's only job was to determine an absence of fraud or collusion in the ~~settlement, not to determine the merits of VCI's post-settlement notice. Hanlon v.~~

2

JOINT STIPULATION RE MOTION TO COMPEL

1    Chrysler Corp._, 150 F. 3d 1011, 1027 (9th Cir. 1997). Thus, the notice at issue in

2    this case was not actually litigated in Okudan.

3         VCI also contends that the purchase transaction at issue in this case is not

4    covered by the Rees-Levering Act. VCI argues that the sale of the car was made by

5    a wholly-owned subsidiary of VCI called  "VW Credit Leasing, Ltd.," and that VW

6    Credit Leasing is the legal owner of the vehicle.  VCI further contends that Mr.

7    Sharma allegedly obtained a "direct loan" with VCI, taking the transaction out of

8    coverage of the Rees-Levering Act.  Plaintiffs believe that to be incorrect, and that

9    notwithstanding VCI's corporate shell game, Mr. Sharma's loan is covered by the

10    Rees-Levering Act as "seller assisted financing."  See Hernandez v. Atlantic

11    Finance, 105 Cal.App.3d 65, 75-77 (1980) (holding that a financing arrangement

12    controlled jointly by the seller and the lender is seller-assisted financing covered by

13    the Rees-Levering Act). VCI has refused to allow for the discovery of information

14    and documents that will allow the parties and the Court to fully develop and

15    understand the nature of the transaction.

16    B.   Present Motion to Compel Further Responses to Document Demands

17         The present motion concerns plaintiff's first set of document demands, and

18    first set of interrogatories, which were served in May, 2012.  VCI responded with

19    nearly 100% boilerplate objections on July 11, 2012, and a rump document

20    production. Plaintiff began a meet and confer process, and counsel conducted the

21    pre-motion conference on September 19, 2012.  VCI promised to make

22    supplemental responses at the conference, without stating which objections it

23    would withdraw. Defendant served its supplemental responses on October 15,

24    2012, withdrawing its boilerplate objections as to some discovery demands, and

25    making two small supplemental document productions.

26         Some of the documents which VCI promised in its supplemental responses

27    were not produced.  VCI also continued to object to the production of information

28    and documents central to plaintiffs' claims, including such essentials as the

numbers of class members, the amount in controversy, a class list with the identities of class members, and VCI's post-repossession policies and procedures. VCI claims that plaintiffs must accept VCI at its word, without being able to test the veracity of its statements. That undermines the purpose of discovery. Moreover, plaintiffs have stipulated to a protective order, which was entered by the Court (see Docket No. 30), so there is no legitimate basis for VCI to withhold the requested documents and information.

## II.  DEFENDANT'S INTRODUCTORY STATEMENT

A.     Factual Background

On May 5, 2008, Gaja Sharma purchased a 2005 Audi A4 (the "Vehicle") from VW Credit Leasing, Ltd. ("VCL") upon expiration of his lease.  He obtained a purchase money loan from defendant VCI to complete this purchase as memorialized in a Note, Disclosure, and Security Agreement dated May 5, 2008 (the "Note").  The Note is not a conditional sale contract governed by the Rees-Levering Act.  Accordingly, the Rees-Levering Act does not apply.  See Cal. Civ. Code § 2982.5(a), (d).  Plaintiffs' reliance on Hernandez v. Atlantic Finance, 105 Cal. App. 3d 65 (1980), to argue that the Rees-Levering Act does apply to the Note, is misplaced.  In Hernandez, the owner of the used-car dealer would contact defendant Atlantic Finance ("Atlantic") to determine whether Atlantic would extend credit to the dealer's prospective automobile customers.  Id. at 74.  Atlantic would either agree to purchase a conditional sales contract from the auto dealer or extend a personal loan directly to the purchaser.  Id.  Here, VCL is a trust with no employees.  Thus, although it is the owner/seller of the leased vehicle, it does not "assist" or in any other way participate in the direct loan that VCI makes to its existing customers (whose leases it services) to purchase vehicles out of lease. Indeed, consistent with this arrangement, the court in Hernandez expressly stated:

> To conclude that the exemption in subdivision (a) is designed to exclude from the coverage of the act only independent private negotiations between a buyer and his lender, without involvement of the seller, is consistent with the legislative purpose and policy behind the [Rees-Levering] act, and leaves the act free to achieve the ends and eliminate the evils to which it was originally addressed.

That precisely is what occurred here.  Gaja Sharma, having an existing relationship with VCI, obtained a direct purchase money loan from VCI to purchase his leased vehicle from VCL.  That VCL is related by corporate affiliation does not bring it into the seller-assisted financing arrangement clearly at play in Hernandez.  VCL, with no employees, was not involved in the transaction other than as the seller.  The Gaja Sharma and VCI entered into the Note on their own terms without involvement from VCL.  Accordingly, Hernandez actually supports VCI's position that the Rees-Levering Act does not apply.

In late August, 2010, following Gaja Sharma's death, Mr. Sharma's wife, Snehlata Sharma, not either of plaintiffs Varsha or Sheetal Sharma ("Plaintiffs"), faxed a copy of Mr. Sharma's death certificate to VCI.  VCI responded, advising of three options available to Mr. Sharma's Estate (the "Estate") -- not knowing who the legal successor was -- with respect to the Vehicle:  (1) the Estate could surrender the Vehicle, after which VCI would sell the Vehicle and apply the sale proceeds to the Note balance; (2) the Estate could purchase the Vehicle by paying off the Note in full; or (3) the Estate could transfer the loan obligations to a known, credit-worthy candidate.  The letter advised that the Estate had 90 days to advise VCI of its decision.  Critically, the letter further advised that "[t]he above three options require that the account balance and proof of insurance remain current."

Contrary to Plaintiffs' assertion, the account thereafter remained in default and, on November 8, 2010, VCI repossessed the Vehicle for nonpayment.  On November 12, 2010, VCI sent a Notice of Intent to Dispose of Motor Vehicle ("NOI") to the Estate, advising that VCI intended to sell the Vehicle unless the Estate reinstated the contract pursuant to the conditions clearly and completely set forth therein, or redeemed the Vehicle before it was sold.  Again contrary to

1   Plaintiffs' allegations, the NOI fully complied with the Rees-Levering Act.  The

2   Estate did not obtain an extension and made no attempt to redeem or reinstate.  VCI

3   did not sell the Vehicle until January 13, 2011, and applied the sale proceeds to the

4   oustanding contract balance, resulting in a deficiency balance of $5,661.75.  VCI

5   never attempted to collect on the deficiency.

6       Given Plaintiffs' unique circumstances as alleged "heirs" to the Vehicle, that

7   the Note is not a conditional sale contract governed by the Rees-Levering Act, and

8   that VCI did not seek recovery of the deficiency, Plaintiffs are entirely dissimilar

9   from the class of individuals they purport to represent and are not adequate to

10  represent anyone.  Accordingly, this action is not appropriate for class treatment

11  and the discovery they seek is grossly overbroad.

12      Furthermore, VCI's current form of NOI, as implemented on April 14, 2010

13  pursuant to the class action settlement confirmed by the court in Okudan v. VW

14  Credit, Inc., U.S.D.C. Southern District of California Case No. 3:09-cv-02293-H

15  ("Okudan"), complies with the Rees-Levering Act.  Specifically, in its order finally

16  approving the class action settlement in Okudan, Judge Huff found as follows:

17      The Court notes that the Settlement Class period ends on April 13, 2010,
        which is more than one year before Class Counsel moved for preliminary
18      approval of the Settlement on May 26, 2011.  The Court finds that Class
        Counsel's opinions in the Motion and supporting Declaration of Carol M.
19      Brewer (Doc. Nos 41-1 & 41-2), that the form of NOI implemented by VCI
        on April 14, 2010 meets the requirements of California Civil Code section
20      2983.2(a)(2) as interpreted in Juarez v. Arcadia Fin., Ltd., 152 Cal. App. 4th
        889 (2007), are reasonable.  The Court therefore finds that the Settlement
21      Class period ends appropriately on April 13, 2010.

22  See November 10, 2011 Order Granting Motion for Final Approval of Class Action

23  Settlement, Docket No. 44; see also Plaintiff's Motion for Final Approval of Class

24  Action Settlement, Docket No. 41, at p. 2; Declaration of Carol M. Brewer in

25  Support of Plaintiff's Motion for Final Approval Of Class Action Settlement,

26  Docket No. 41, Ex. 2, at ¶ 9.[1]

27  _____

28  [1] Copies of the referenced documents from Okudan are attached as
    Exhibits A-C, respectively, to VCI's Request for Judicial Notice.

1   VCI's form of NOI was the subject of extensive discovery in <u>Okudan</u>, and its

2   modification was addressed during settlement negotiations.  Upon Class Counsel's

3   agreement that the NOI complied with the Rees-Levering Act, and subsequent

4   showing of their investigation and corresponding conclusions, the Court found

5   plaintiff and Class Counsel satisfied their fiduciary obligations to absent class

6   members under Rule 23(e).  In so doing, the court permitted Class Counsel to

7   abandon the claims of VCI's customers who received the NOI between April 13,

8   2010, as modified through settlement negotiations, and May 26, 2011, <u>over one</u>

9   <u>year later</u>, when the <u>Okudan</u> court preliminary approved the settlement.  See Fed.

10  R. Civ. P. 23(3); <u>Grunin v. Int'l House of Pancakes</u>, 513 F.2d 114, 123 (8th Cir.

11  1975).  If that same NOI violates the Rees-Levering Act as Plaintiffs allege, which

12  VCI denies, then the <u>Okudan</u> settlement should not have been approved as

13  presented to the Court, and VCI's customers who received the NOI for <u>over one</u>

14  <u>year</u> after its modification and preliminary approval of the settlement were not

15  properly protected by Class Counsel and the court in <u>Okudan</u>.

16  B.   <u>Discovery to Date</u>

17       On May 2, 2012, Plaintiffs propounded their First Set of Document Demands

18  (the "Document Demands") and their First Set of Interrogatories (the

19  "Interrogatories").  Contary to Plaintiffs' false assertions, VCI promptly produced

20  107 pages of responsive documents on June 21, 2012.  VCI made two additional

21  productions on August 10, 2012, September 28, 2012, March 26, 2013, April 11,

22  2013 and April 12, 2013, for a total of 269 pages, which include all documents

23  related to Gaja Sharma's account and repossession, substantive vendor contracts

24  and policies and procedures relating to VCI's repossession process.  VCI also

25  served supplemental responses to Plaintiffs' Requests for Production and

26  Interrogatories.

27       Since then, counsel for the parties have continued their meet and confer

28  ~~efforts and VCI has gone to great lengths to provide Plaintiffs with the information~~

7

JOINT STIPULATION RE MOTION TO COMPEL

and documents they requested.  After receiving Plaintiffs' initial Joint Stipulation on February 21, 2013, containing nearly 60 discovery requests, VCI agreed to provide or did provide additional information and documents narrowing the dispute down to 24 discovery requests, as set forth herein (with some exceptions).  At this point, it is VCI's position that it has fully complied with its discovery obligations.

### III.    DISPUTED DISCOVERY AND PARTIES' CONTENTIONS

### PLAINTIFF'S FIRST SET OF DOCUMENT DEMANDS

<u>DEFINITIONS</u> (provided for context)

1.    The term "DOCUMENT" or "DOCUMENTS" means any and all tangible things upon which any expression, communication or representation is reflected or has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostating, photographing, magnetic impulse, or mechanical, phonic or electronic recording, computerized data whether on disk, hard drive or otherwise, and any nonidentical copies (whether different from the original because of notes made on such copies, because of indications that the copies were sent to different individuals than were the originals, or any other reason), including but not limited to abstracts, agreements, analyses, blueprints, books, brochures, circulars, compilations, consultants' reports or studies, contracts, databases, files, graphs, insurance policies, letters, lists, manuals, maps, notebooks, opinions, pamphlets, papers, pictures, plans, projections, press releases or clippings, publications, reports, working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, minutes or records of any sort of meeting, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, telephone message slips, desk calendars, appointment books, computer tapes, computer disks, computer printouts, computer cards, electronically stored data, and all other writings (as that term is defined in ~~Evidence Code § 250) and recordings of any kind.~~

2.    The term "RELEVANT PERIOD" means from April 14, 2010 through the present.

3.    The term "CONTRACT" or "CONTRACTS" means any conditional sale contract or other contract within the definition set forth at Civil Code § 2981(a) to which YOU are or were a party, or of which YOU are or at any time were a holder or assignee, and which was entered into in California.

4.    The term "REPOSSESSION" or "REPOSSESSIONS" means any repossession(s) or voluntary surrender(s) of any motor vehicle(s) (as defined in Civil Code § 2981(k)), which vehicle is or was collateral under a CONTRACT.

5.    The term 'YOU" or "YOUR" means defendant VW Credit, Inc., and any present or former employees, officers, directors, or agents of same.

6.    The term "CUSTOMER" or "CUSTOMERS" means any buyer(s), co-buyer(s), or person(s) liable to YOU, under a CONTRACT.

7.    The term "NOTICE" or "NOTICES" refers to any notice(s) mailed or otherwise served upon or sent or delivered in any manner to any CUSTOMER at the time of or following any REPOSSESSION which was intended by YOU to, or which YOU contend did in fact, provide all or any part of any notice which is or was required by California Civil Code § 2983.2(a).

8.    The term "YEAR" means the calendar year, or if the full calendar year is not applicable, any fractional portion of that year.

9.    The term "PLAINTIFF" means Varsha Sharma, Sheetal Sharma, and/or the Estate of Gaja Sharma.

10.    The term "CONCERNING" or "CONCERN" means referring to, alluding to, relating to, connected with, commenting upon, in respect of, about, regarding, discussing,
reflecting, analyzing, evaluating, summarizing, touching upon, or constituting, sent to, served upon, mailed or delivered to.

11.     The term "DISPOSITION" or "DISPOSITIONS" means any sale(s) or other disposition(s) of a CUSTOMER's vehicle after REPOSSESSION.

12.     The term "DEFICIENCY" or "DEFICIENCIES" means any amount(s) which YOUR business records reflect was or is owed, or an outstanding or unpaid balance, including but not limited to principal, interest, late or delinquent charges, repossession or towing or storage charges or costs, attorneys fees or court costs on a CUSTOMER's account following DISPOSITION.

13.     The term "SENT" means mailed, served upon, delivered or transmitted in any manner.

14.     The term "FORM" means that portion of the text of a "DOCUMENT" intended to be used in connection with more than one CUSTOMER, and which is intended to be individualized for a CUSTOMER by adding to the DOCUMENT information specifically related to the CUSTOMER or CUSTOMER's account or CONTRACT, for example, the CUSTOMER's name, address and account-related information.

15.     The term "REPORT" or "REPORTS" means a DOCUMENT stored, prepared, compiled or generated in any manner by any of YOUR employees, officers, accountants, auditors, or any agent, vendor, consultant or independent contractor, to compile or summarize any information with respect to any subject concerning any aspect of YOUR business, including but not limited to daily, weekly, monthly or annual reports regarding the activities of a department or status of accounts with respect to which a department is conducting business activities.

16.  The term "CLASS MEMBERS" or "CLASS MEMBER" means any CUSTOMER who was issued a NOTICE during the RELEVANT PERIOD, and who did not subsequently reinstate or redeem his or her CONTRACT.

**Requests for Production Nos. 7, 10, 20, 33**

~~Omitted for sake of brevity (see Exhibit 1 to Trueblood Declaration for text).~~

JOINT STIPULATION RE MOTION TO COMPEL

**Response to Requests for Production Nos. 7, 10, 20, 33**

Without waiving, and subject to, its prior objections, VCI supplements its response to this Request as follows:  VCI will produce those documents within its possession, custody or control that are responsive to this Request and that can be located after a diligent search and reasonable inquiry.

PLAINTIFF'S CONTENTIONS

As to these document demands, VCI promised to produce documents, but did not actually produce any responsive documents, or made only a partial production. See Trueblood Decl., ¶ 3.  The missing documents are summarized as follows:

No. 7.  (Communications between VCI and third parties, including the auction house and repossessor agency).  VCI states it has produced all communications with auction houses, but VCI and its repossessors would have communicated (by industry standard) in a "Recovery Data Network" database (or a database under another name).  Plaintiff would like this database produced.

No. 10. (Debits and credits on plaintiffs' account). Incomplete production. Only a few notations of payments appear, leaving out a complete history of all debits and credits.

No. 20. (memos and documents regarding implementation of the $25 redemption fee). None produced.

No. 33 (memoranda and letters/transmittals concerning changes to VCI's post repo notices over the class period).  None produced.

If there are no documents, VCI must attest to that fact under oath, and state the reason why there are no documents (e.g., the document never existed; has been lost or stolen; was inadvertently destroyed; or is not in the possession, custody or control of VCI).

DEFENDANT'S CONTENTIONS

Plaintiffs falsely and inexplicably state that VCI has not produced documents responsive to these Requests when VCI plainly did. VCI responds to Plaintiffs' specific contentions above as follows:

No. 7: As explained to Plaintiffs, any communications between VCI and its repossession contractors, such as ARS and Manheim Auto Auction, are included in the account-level notes for each customer's VCI account. Here, VCI produced the account notes for Gaja Sharma's account (VCI0000114-VCI0000134), which reflect those communications. VCI also produced the Repossession Report and Condition Report it received from ARS regarding the Vehicle (VCI0000254-VCI0000255), as well as VCI's invoice from ARS regarding the repossession fee for the vehicle (VCI0000197-VCI0000205). The Recovery Network Database, to which Plaintiffs refer, is <u>not</u> VCI's system and the documents VCI produced and information it provided are duplicative of anything within that system.

No. 10: Plaintiffs falsely state that VCI has not produced a history of debits and credits on Garja Sharma's account. VCI indeed produced this information in the document Bates labeled VCI000108-VCI000113, which depicts all debits and credits on Mr. Sharma's account between June 2008 and August 2011. Mr. Sharma's account-level notes (VCI0000114-VCI0000134) also reflect payments made on the account. Plaintiffs' attempt to compel documents already produced is improper and harassing. <u>See</u> <u>Jimena v. UBS AG Bank</u>, CV-F-07-367 OWW/SKO, 2010 WL 4644408, at *2 (E.D. Cal. Nov. 5, 2010).

No. 33: VCI produced three versions of its NOI, including the version implemented as a result of <u>Okudan</u> plus two revisions. Thus, to state that VCI has not produced any documents is improper. VCI has produced all non-privileged documents concerning changes to its NOI over the proposed class period that are responsive to this request located after a diligent search and reasonable inquiry. ~~VCI is preparing a privilege log for any remaining documents.~~

**Request for Production No. 16:**

All DOCUMENTS in use during the RELEVANT PERIOD which CONCERN YOUR practices, policies, or procedures regarding the collection of any DEFICIENCY.

**Response to Request for Production No. 16:**

VCI objects to this Request on the grounds, among others, that:  (i) it is vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; and (iii) it seeks confidential, proprietary business documents that belong to VCI and/or third parties.

PLAINTIFF'S CONTENTIONS

Plaintiffs have challenged VCI's practice of collecting on unlawful deficiency balances, under various consumer protection laws, including the Rosenthal Fair Debt Collection Practices Act (Complaint, ¶ 56), the Rees-Levering Act (Complaint ¶ 38), and the Unfair Competition Law (Complaint, ¶ 68(d)-(j)). The gist of these allegations is that VCI misrepresented to the class that the class owed deficiency balances, and unjustly enriched itself through those misrepresentations, since the class actually owed nothing under Civil Code § 2983.2(a).  See Complaint, ¶ 25.  The collection of an unlawful deficiency balance is prohibited by the UCL.  Fireside Bank v. Superior Court, 40 Cal. 4th 1069, 1090 (("Gonzalez has standing. She, like other members of the putative class, was subjected to the same alleged wrong: deprivation of a fair opportunity to redeem the financed vehicle, followed by an unlawful demand for payment.").

The policies and procedures regarding VCI's collections process are therefore clearly relevant to VCI's "unlawful demand(s) for payment." Id. at 1090. Plaintiffs wish to present VCI's form collection letters and its standard debt collection procedure as evidence that VCI collected money from class members to which it was not entitled, using misrepresentations that the deficiency balances

1   were owed.  This goes to the heart of the case, and VCI should be compelled to

2   produce the requested documents.

3        There is no statute or protective order in this case which requires plaintiffs to

4   defer merits discovery until after class certification has been granted.  Class

5   certification issues are inherently tied to merits issues, in any event.  For example,

6   plaintiff will need to demonstrate on class certification that each violation of the

7   law (each fee and charge omitted by VCI in its notice) is uniform and typical of the

8   class.  The general rule is that discovery is necessary and permitted to determine

9   class certification. Vinole v. Countrywide Home Loans, Inc. 571 F.3d 935, 942 (9th

10  Cir.2009) ("Our cases stand for the unremarkable proposition that often the

11  pleadings alone will not resolve the question of class certification and that some

12  discovery will be warranted.").

13  DEFENDANT'S CONTENTIONS

14       Plaintiffs define "DEFICIENCY" as "amount(s) which YOUR business

15  records reflect was or is owed, or an outstanding or unpaid balance" on a

16  customer's account following a post-repossession sale or other disposition.

17  However, as reflected in Gaja Sharma's account notes, VCI made no attempt to

18  collect any deficiency on the account following sale of the Vehicle after sending its

19  Application of Proceeds letter to the Estate on January 24, 2011 (VCI0000012-

20  VCI0000014).

21       Critically, class-focused discovery must be limited to issues relevant to the

22  elements of class certification, i.e., the existence of an ascertainable class, the

23  predominance of common questions of law or fact, the typicality of the class

24  representative's claims, and the ability of the class representative to fairly and

25  adequately protect the interests of the class.  Among other problmes, Plaintiffs'

26  claims are not typical of the claims of all recipients of communications from VCI.

27  "The typicality requirement is said to limit the class claims to those fairly

28  encompassed by the named plaintiff's claims."  Gen. Tel. Co. of the Northwest, Inc.

14        JOINT STIPULATION RE MOTION TO COMPEL

1  v. EEOC, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980).  In other

2  words, the named plaintiff's claims are typical only of those individuals who were

3  subject to similar conduct from the defendant.  See Byes v. Telecheck Recovery

4  Servs., 173 F.R.D. 421, 425 (E.D. La. 1997) (denying certification where "class

5  members who never received their letters would not have claims typical of

6  [plaintiff] who received all five letters"); see also Savino v. Computer Credit, 173

7  F.R.D. 346, 353 (E.D.N.Y. 1997) (unnamed class members received a collection

8  letter similar to the one received by the named plaintiff); see also Rollins v. Sears,

9  Roebuck & Co., 71 F.R.D. 540, 545 (E.D. La. 1976) ("The named plaintiff's claims

10  are typical since he alleges that all class members received the same form

11  containing the same violations.").

12   As mentioned above, at no point did VCI attempt to collect upon or enforce

13  the deficiency balance on Gaja Sharma's account against the Estate or Plaintiffs.

14  Rather, VCI only sent the Estate the Application of Proceeds letter, and VCI

15  already produced its policy regarding the establishment of deficinecy balances that

16  is the basis for this letter.  See VCI0000187.  Plaintiffs are not entitled to perform a

17  general review of VCI's collection procedures to which Plaintiffs were not subject.

18  Accordingly, no further production is warranted in response to this Request.

19

20  **Request for Production No. 21:**

21   All DOCUMENTS which constitute the complete files of at least 50 CLASS

22  MEMBERS who reinstated their CONTRACTS after REPOSSESSION, during the

23  RELEVANT PERIOD (please provide a list of all account numbers of CLASS

24  MEMBERS, and plaintiffs' counsel will randomly select 50 of those account

25  numbers).

26  **Response to Request for Production No. 21:**

27   VCI objects to this Request on the grounds, among others, that:  (i) it is

28  vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; (iii) it

1  seeks confidential, proprietary business documents that belong to VCI and/or third

2  parties; (iv) it seeks documents in which non-parties have a reasonable expectation

3  and/or right of privacy; and (v) it is an improper request prior to class certification.

4  PLAINTIFF'S CONTENTIONS

5      VCI has not interposed a relevance objection, because these documents are

6  clearly pertinent to plaintiffs' claims. The request seeks a limited sampling of files

7  of 50 VCI customers in California who reinstated their contracts after repossession,

8  and got their vehicles back.  The purpose of the demand is to learn what

9  requirements VCI imposed upon these customers as "conditions precedent to

10  reinstatement" (Civil Code § 2983.2(a)(2)).  Such requirements could include

11  illegal demands for additional references, proof of income, proof of employment,

12  proof of insurance, or other burdensome items.  VCI admits in its interrogatory

13  responses that it demanded references from customers before allowing

14  reinstatement.  See Supp. Response to Special Interrogatory No. 13.  The Rees-

15  Levering Act prohibits the lender from demanding anything other than past due

16  payments and repossession costs, as a condition of reinstatement.  Civil Code §

17  2983.3(d).  The 50 files will show whether these customers provided additional

18  (illegal) data to VCI to get their cars back, such as pay stubs, references,

19  employment verification, and the like.  If so, then VCI not only violated Civil Code

20  § 2983.3(d), but also potentially Civil Code § 2983.2(a)(2), since none of these

21  items was specified in VCI's form post-repossession notice as a condition of

22  reinstatement.

23      The privacy objection has no merit.  At this time, plaintiffs will accept

24  redacted files, which black out the name and address of the individual VCI

25  customers.  If the files reveal violations, plaintiffs will propound another request for

26  the identifying information, since these persons would be witnesses.  VCI can

27  litigate the privacy objection at that time.

28

JOINT STIPULATION RE MOTION TO COMPEL

1    The objection that this request is before class certification also has no merit.

2    There is no statutory limitation on merits discovery prior to class certification.

3    Plaintiffs are entitled to investigate the merits of their claims.  Moreover, this

4    request is relevant to class certification, since those class members who reinstated

5    (and were forced to provide illegal information such as references), may have to be

6    subclassed in the class certification motion.

7    DEFENDANT'S CONTENTIONS

8    VCI continues to object to Plaintiffs' request for 50 customers' files who

9    successfully reinstated their contracts on the grounds that this case does not involve

10   customers who successfully reinstated.  Accordingly, Plaintiffs' claims are not

11   typical of VCI customers who did successfully reinstate.

12   Moreover, the Request impermissibly seeks precertification discovery from

13   unnamed class members.  See Rojas v. Marko Zaninovich, Inc, 1:09-CV-00705

14   AWI, 2011 WL 2636071, at *4 (E.D. Cal. July 5, 2011) ("Generally, courts do not

15   permit discovery from absent class members.") (citing McPhail v. First Command

16   Fin. Planning, 251 F.R.D. 514, 517 (S.D. Cal. 2008)); Withers v. eHarmony, Inc.,

17   267 F.R.D. 316, 320 (C.D. Cal. 2010) (noting that precertification discovery in

18   class actions generally must relate to class certification issues and that "discovery

19   from unnamed class members may be allowed only in special circumstances")

20   (emphasis added); In re Carbon Dioxide Indus. Antitrust Litig., 155 F.R.D. 209,

21   212 (M.D. Fla. 1993) (denying motion to compel discovery of unnamed class

22   members in part because "there is no indication that the information sought from

23   the non-representative class members differs in any way from the information

24   already provided by the class representatives."); Pierce v. County of Orange, 526

25   F.3d 1190, 1207 n.9 (9th Cir. 2008) (recognizing the "limitations on absent class

26   member discovery inherent in Fed. R. Civ. P. 23."); see also Clark v. Universal

27   Builders, 501 F.2d 324, 340 (7th Cir. 1974); Baldwin & Flynn v. Nat'l Safety

28   Assocs., 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Plaintiffs have not demonstrated

1  any reason why the present circumstances warrant deviation from the inherent

2  limitation on precertification discovery of unnamed class members, or that such

3  discovery is related to anything other than the merits of a class claim.  This

4  discovery should not be permitted.

5

6  **Requests for Production Nos. 23, 24, 25:**

7        23.  All REPORTS which reflect the current aggregate amount of

8  DEFICIENCIES on the accounts of those CUSTOMERS who were SENT a

9  NOTICE during the RELEVANT PERIOD, but who did not reinstate or redeem.

10       24.  All REPORTS which reflect the current aggregate amount of dollar

11  amounts collected on DEFICIENCIES on the accounts of those CUSTOMERS who

12  were SENT a NOTICE during the RELEVANT PERIOD, but who did not reinstate

13  or redeem.

14       25.  All REPORTS which reflect the aggregate dollar amounts of

15  DEFICIENCY judgments taken against CUSTOMERS in lawsuits YOU filed

16  during the RELEVANT PERIOD to collect DEFICIENCIES.

17  **Response to Request for Production Nos. 23, 24, and 25:**

18       VCI objects to this Request on the grounds, among others, that:  (i) it is

19  vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; (iii) it

20  seeks documents that are neither relevant nor reasonably calculated to lead to the

21  discovery of admissible evidence in this action; (iv) it seeks confidential,

22  proprietary business documents that belong to VCI and/or third parties; (v) it seeks

23  documents in which non-parties have a reasonable expectation and/or right to

24  privacy; and (vi) it is an improper request prior to class certification.

25  PLAINTIFF'S CONTENTIONS

26       These requests go to the heart of class certification.  Plaintiffs are requesting

27  the amount of deficiency balances of class members (Request 23), the amounts

28  ~~collected on those deficiency balances (Request 24), and the numbers of class~~

1   members who already have a judgment against them, and who therefore may be

2   subject to a res judicata defense (Request No. 25).  Plaintiffs have the burden of

3   proof on class certification to show numerosity, the amount in controversy, and that

4   a class action is superior to individual actions because the amount at stake for each

5   class member is small enough that it is unlikely to be litigated in individual cases.

6   These document demands seek any reports or spreadsheets which reflect this

7   essential class scope data.  A plaintiff is generally entitled to class certification

8   discovery. Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 & n. 14 (11th

9   Cir.2008); In Re Am. Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir.1996) ("The

10  court should defer decision on certification pending discovery if the existing record

11  is inadequate for resolving the relevant issues.")

12          The burden objection is meritless.  Plaintiffs are not seeking individual class

13  member files, but only reports or spreadsheets compiled from VCI's databases, as

14  to the putative class.

15          The confidentiality objection is moot, since the parties have entered a

16  protective order.

17          The third party privacy objection is meritless, because plaintiffs are seeking

18  only aggregate data reflected in reports, not individual names or account numbers.

19          The objection that the request is "prior to class certification" is illogical.

20  These document demands concern the scope of the class, and therefore are directly

21  relevant to class certification itself.  This data is within the exclusive control of

22  VCI. Moreover, there is no statutory limitation on plaintiffs' discovery rights

23  before class certification.  VCI claims to have provided this information at the time

24  of removal, but that occurred over a year ago, and plaintiffs are entitled to the

25  current class data, as of today.

26          DEFENDANT'S CONTENTIONS

27          In connection with its Notice of Removal of the instant action to this Court,

28  ~~VCI filed the Declaration of Thomas J. Szot (the "Szot Declaration").  See Docket~~

19

JOINT STIPULATION RE MOTION TO COMPEL

1    No. 1.  The Szot Declaration states, among other things, that according to VCI's

2    records, as of September 9, 2011, there were 2,100 retail installment sales contracts

3    in VCI's records for which VCI sent its California NOI to the buyer between April

4    14, 2010 and August 12, 2011.  Szot Decl., ¶ 5.  The outstanding deficiency

5    balances owed to VCI on 1,365 of these contracts was approximately

6    $11,276,140.20 as of September 9, 2011.  Id.  VCI was unable to identify at that

7    time which of the remaining 735 accounts, if any, have or will have a deficiency

8    balance assessed against it.  Id.

9        Plainly, the Szot Declaration contains sufficient information regarding such

10   amounts and number of customers, and a further response would be unnecessarily

11   duplicative and overly burdensome.  Additionally, it seeks information that would

12   relate only to damages, which is not appropriate at this stage of the litigation.  See

13   Bird Hotel Corp. v. Super 8 Motels, Inc., No. CIV 06-4073, 2007 WL 404703, at

14   *1-2 (D.S.D. Feb. 1 2007) ("Revenue information has likewise been found not

15   relevant to the issue of class certification."); Thompson v. Jiffy Lube Int'l, Inc., No.

16   05-1203-WEB, 2006 WL 1174040, at *3 (D. Kan. May 1, 2006) ("Plaintiff has

17   failed to show that the requested revenue data is relevant to class certification [and]

18   [t]he fact that defendant generates revenue, in and of itself, proves nothing for

19   purposes of class certification."); Danzig v. Super. Ct., 87 Cal. App. 3d 604, 612

20   (1978) (noting that interrogatories seeking, among other things, information

21   regarding damages were not germane to class issues and, therefore, were not

22   required to be furnished prior to certification).  Indeed, the current aggregate

23   amount of deficiencies speaks only to the purported damages of the class, and does

24   not bear on any of the requirements plaintiffs must meet for class certification.

25   Bird, 2007 WL 404703, at *1-2; Thompson, 2006 WL 1174040, at *3; Danzig, 87

26   Cal. App. 3d at 612.  Accordingly, this discovery should not be permitted.

27        Moreover, VCI has no existing documents that would be responsive to these

28   Requests.  Rather, any documents reflecting the information requested would have

1   to be created.  VCI cannot be compelled to "create" documents to produce in

2   response to Plaintiffs' document requests.  See Washington v. Garrett, 10 F.3d

3   1421, 1437-38 (9th Cir. 1993); Cholakyan v. Mercedes-Benz USA, LLC, Case No.

4   CV 10-5944 MMM JC, 2011 WL 7575379, at *10 n.10 (C.D. Cal. Dec. 20, 2011)

5   ("Fed.R.Civ.P. 34 only requires a party to produce documents that are already in

6   existence."); Chatman v. Tyner, Case No. 1:03-CV-06636, 2006 WL 3762043, at

7   *1 (E.D. Cal. Dec. 20, 2006); Dickey v. Churray, Case No. CIV S-03-2215, 2006

8   WL 1153796, at * 6 (E.D. Cal. May 2, 2006) Goodrich Corp. v. Emhart Indus.,

9   Inc., Case No. EDCV0400759VAPSSX, 2005 WL 6440828, at *5 (C.D. Cal. June

10   10, 2005) ("A responding party is not required to 'create' documents to respond to

11   a discovery request.").

12

13   **Request for Production Nos. 27, 28:**

14       27. All FORM collection letters or notices SENT by YOU to CUSTOMERS

15   during the RELEVANT PERIOD as to accounts on which a DEFICIENCY was

16   allegedly owed.

17       28. All FORM collection letters or notices SENT by your collection agencies

18   and/or lawyers to CUSTOMERS during the RELEVANT PERIOD as to accounts

19   on which a DEFICIENCY was allegedly owed.

20   **Response to Request for Production Nos. 27, 28:**

21       VCI objects to this Request on the grounds, among others, that:  (i) it is

22   vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; and

23   (iii) it seeks documents that are neither relevant nor reasonably calculated to lead to

24   the discovery of admissible evidence in this action.

25   PLAINTIFF'S CONTENTIONS

26       See Plaintiffs' Contentions as to Document Demand No. 16.  Plaintiffs are

27   contending in this action that VCI's form collection letters were deceptive because

28   ~~they misrepresented to the class that deficiency balances were owed.  Plaintiffs are~~

not seeking all the letters actually sent out, but only the *forms*, and so these demands are not overly burdensome.

DEFENDANT'S CONTENTIONS

To the extent this Request seeks the form deficiency calculation letter sent by VCI to customers following sale of a repossessed vehicle, VCI produced the deficiency calculation letter issued to the Estate of Gaja Sharma (VCI000012-VCI000014), which represents the only form of such letter used by VCI during the relevant time period.

VCI continues to object to this Request to the extent it seeks documents other than the deficiency calculation letter identified above.  Plaintiffs define "DEFICIENCY" as "amount(s) which YOUR business records reflect was or is owed, or an outstanding or unpaid balance" on a customer's account following a post-repossession sale or other disposition.  However, as reflected in the account notes produced for Gaja Sharma's account and communicated to Plaintiffs' counsel numerous times during the meet and confer process, VCI made no attempt to collect on or enforce any deficiency on Gaja Sharma's account against the Estate (or Plaintiffs).  As already discussed above, Plaintiffs may not seek discovery not related to their claims.  See Gen. Tel. Co. of the Northwest, Inc., 446 U.S. at 330; Byes, 173 F.R.D. at 425; see also Savino, 173 F.R.D. at 353; Rollins, 71 F.R.D. at 545.  Accordingly, this discovery should not be permitted.


**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**Interrogatory No. 1 (provided for context only)**

Identify (by Bates number and author) each FORM NOTICE YOU sent to CUSTOMERS with REPOSSESSIONS during the RELEVANT PERIOD.

**Supplemental Response To Interrogatory No. 1 (provided for context only)**

JOINT STIPULATION RE MOTION TO COMPEL

Without waiving, and subject to, its prior objections, VCI supplements its response to this Interrogatory as follows:  VCI incorporates its Supplemental Response to Interrogatory No. 2 as if fully set forth.

[Supplemental Response to Interrogatory No. 2]:  Without waiving, and subject to, its prior objections, VCI supplements its response to this Interrogatory as follows:  Bates No. VCI0000015-VCI0000022 – April 14, 2010; Bates No. VCI0000233-VCI0000239 – March 28, 2011; Bates No. VCI0000240-VCI0000246 – April 19, 2012.

**Interrogatory Nos. 3-8:**

3.  For each FORM NOTICE identified in response to Interrogatory 1, state the number of CUSTOMERS who were issued that particular FORM NOTICE during the RELEVANT PERIOD.

4.  For each FORM NOTICE identified in response to Interrogatory 1, state the aggregate dollar amount of DEFICIENCIES assessed to those CUSTOMERS who were issued that particular FORM NOTICE during the RELEVANT PERIOD.

5.  For each FORM NOTICE identified in response to Interrogatory 1, state the aggregate dollar amount collected (by YOU or YOUR collection agencies and lawyers) on DEFICIENCIES from those CUSTOMERS who were issued that particular FORM NOTICE during the RELEVANT PERIOD.

6.  State the number of accounts of CUSTOMERS who were sent a NOTICE as to whom YOU or YOUR assignees or agents filed a lawsuit to collect on DEFICIENCIES and in which a judgment was entered, for the RELEVANT PERIOD.

7.  State the dollar amount of the judgments referenced in the previous interrogatory.

8.  State the aggregate dollar amount of deficiency judgments obtained against YOUR CUSTOMERS after the date this lawsuit was filed.

**Response to Interrogatories 3-8**

1    VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is

2    vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; (iii) it

3    seeks confidential, proprietary business information that belongs to VCI; (iv) it

4    seeks information that is neither relevant nor reasonably calculated to lead to the

5    discovery of admissible evidence in this action; and (v) it is an improper request

6    prior to class certification.

7    PLAINTIFF'S CONTENTIONS (Interrogatories 3-8)

8        Inexplicably, VCI refuses to provide this fundamental class scope data: the

9    numbers of class members, the amount in controversy (amount of deficiency

10   balances), the amounts collected on deficiency balances (restitution), and the

11   numbers of class members whom plaintiffs may choose exclude from the class, on

12   class certification, due to potential res judicata of their claims through previous

13   judgments. (Interrogatories 6-8).

14       Obviously, the class numbers are essential to moving for class certification.

15   Plaintiffs have the burden of proof on class certification to show numerosity, the

16   amount in controversy, and that a class action is superior to individual actions

17   because the amount at stake for each class member is small enough that it is

18   unlikely to be litigated in individual cases. FRCP 23; Manolete v. Bolger, 767 F.2d

19   1416, 1424 (9th Cir.1985). VCI's objections to these interrogatories, combined

20   with VCI's refusal to provide any reports or spreadsheets concerning the class

21   scope data (document demands 23-25), means that plaintiffs are currently

22   completely in the dark as to the scope of the class, both in terms of numbers of

23   people affected, and the amount in controversy.  Plaintiffs should not be forced to

24   rely on VCI's removal papers on this critical issue, for plaintiffs are entitled to

25   discovery to test any contentions made in the removal papers. To deny discovery

26   where it is necessary to determine the existence of a class or set of subclasses

27   would be an abuse of discretion. Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304,

28   1313 (9th Cir.1977) ("The better and more advisable practice for a District Court to

1  follow is to afford the litigants an opportunity to present evidence as to whether a

2  class action was maintainable. And, the necessary antecedent to the presentation of

3  evidence is, in most cases, enough discovery to obtain the material, especially when

4  the information is within the sole possession of the defendant."); see also Kamm v.

5  Cal. City Dev. Co., 509 F.2d 205, 210 (9th Cir.1975).

6       Moreover, VCI removed this case to federal court, and asserted federal

7  jurisdiction under the CAFA in its removal papers, by claiming that the amount in

8  controversy exceeds $5 million.  Plaintiffs are entitled to discovery on this essential

9  jurisdictional fact.  The Szot declaration, filed upon removal at the initiation of the

10  case, is outdated and does not provide plaintiff with the *current* class data.

11       DEFENDANT'S CONTENTIONS

12       As discussed above, the Szot Declaration contains sufficient information

13  regarding the information sought by these Interrogatories, and that a further

14  response at this time would be unnecessarily duplicative and overly burdensome.

15  Plaintiffs fail to state why the specific additional information sought is necessary

16  for purposes of class certification given the information already supplied to them.

17  Rather, these Interrogatories seek information that would relate only to damages,

18  which is not appropriate at this stage of the litigation.  See Bird, 2007 WL 404703,

19  at *1-2; Thompson, 2006 WL 1174040, at *3; Danzig, 87 Cal. App. 3d at 612.

20  Indeed, the current aggregate amount of deficiencies speaks only to the purported

21  damages of the class, and does not bear on any of the requirements plaintiffs must

22  meet for class certification.  Bird, 2007 WL 404703, at *1-2; Thompson, 2006 WL

23  1174040, at *3; Danzig, 87 Cal. App. 3d at 612.  Accordingly, this discovery

24  should not be permitted.

25  **Interrogatory No. 17:**

26       Identify (by full name, last known address, last known phone number(s), and

27  account number) all CLASS MEMBERS.

28

25

JOINT STIPULATION RE MOTION TO COMPEL

**Response to Interrogatory No. 17:**

VCI objects to this Interrogatory on the grounds, among others, that: (i) it is vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; (iii) it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action; (iv) it seeks information in which non-parties have a legitimate expectation and/or right of privacy; and (v) it is an improper request prior to class certification.

PLAINTIFF'S CONTENTIONS:

"Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case." CashCall, Inc. v. Superior Court (2008) 159 Cal. App. 4th 273, 284; Pioneer Electronics (USA), Inc. v. Superior Court (2007) 40 Cal.4th 360, 373; Belaire-West Landscape, Inc. v. Superior Court, 149 Cal.App.4th 554 (2007). The disclosure of names, addresses, and telephone numbers is thus commonly ordered in the class action context. See Algee v. Nordstrom, Inc., 2012 WL 1575314, at *4 (N.D.Cal. May 03, 2012); Currie–White v. Blockbuster, Inc., 2010 WL 1526314, at *2 (N.D.Cal. Apr.15, 2010); Putnam v. Eli Lilly & Co., 508 F.Supp.2d 812, 814 (C.D.Cal.2002).

Plaintiffs are willing to utilize the "opt-out" letter procedure set forth in the Belaire case, or better yet to use the existing protective order, to eliminate any privacy concerns of the putative class members. Defendant's privacy objection is therefore moot, and production of the putative class list should be ordered under the above cases, all of which compelled such production prior to class certification.

The list is particularly relevant here, where VCI alleges that the class representatives are unsuitable due to special facts in their transaction, i.e. that they were the heirs of Gaja Sharma rather than the consumer himself. If plaintiffs are determined to be unsuitable class representatives, they will be entitled to substitute in additional class representatives from the list, to preserve the class action. As

1  stated in <u>Willner v. Manpower, Inc.</u>, 2012 WL 4902994 (N.D. Cal. 2012), p. 4,

2  "The contact information and subsequent contact with potential class members is

3  necessary to determine whether Plaintiff's claims are typical of the class, and

4  ultimately whether the action may be maintained as a class action."

5  <u>DEFENDANT'S CONTENTIONS</u>

6       Plaintiffs request the contact information for all alleged putative class

7  members in this action.  VCI continues to object to this Interrogatory on the

8  grounds that it impermissibly seeks precertification discovery from unnamed class

9  members.  <u>See</u> <u>Rojas</u>, 2011 WL 2636071; <u>Withers</u>, 267 F.R.D. at 320; <u>In re Carbon</u>

10  <u>Dioxide</u>, 155 F.R.D. at 212; <u>Pierce</u>, 526 F.3d at 1207 n.9; <u>see also</u> <u>Clark</u>, 501 F.2d

11  at 340; <u>Baldwin</u>, 149 F.R.D. at 600 (N.D. Cal. 1993).

12       Importantly, the information here is not simply limited to contact

13  information, as Plaintiffs suggest, but necessarily involves the disclosure of a list of

14  individuals who meet a particularly sensitive criterion:  customers who received a

15  notice from VCI advising that it intended to sell their repossessed vehicles because

16  they broke promises under their contracts with VCI.  <u>Compare</u> <u>Planned Parenthood</u>

17  <u>Golden Gate v. Super. Ct.</u>, 83 Cal. App. 4th 347, 359 (2000) (refusing to permit

18  discovery of contact information for employees of abortion clinic) <u>with</u> <u>Khalilpour</u>

19  <u>v. CELLCO P'ship</u>, C 09-02712 CW MEJ, 2010 WL 1267749 (N.D. Cal. Apr. 1,

20  2010) (permitting discovery of limited contact informration because "it does not

21  involve revelation of personal secrets, intimate activities, or similar private

22  information, which have been found to be serious invasions of privacy").

23       In support of their position, Plaintiffs cite <u>CashCall, Inc. v. Superior Court</u>,

24  159 Cal. App. 4th 273, 284 (2008), <u>Pioneer Electronics (USA), Inc. v. Superior</u>

25  <u>Court</u>, 40 Cal. 4th 360, 373 (2007) and <u>Belaire-West Landscape, Inc. v. Superior</u>

26  <u>Court</u>, 149 Cal. App.4th 554 (2007).  Each of these cases is inapposite.  In

27  <u>CashCall, Inc.</u>, the Calfiornia Court of Appeal granted discovery of unnamed class

28  ~~members in an action arising from the defendant's act of secretly recording phone~~

calls with its customers.  159 Cal. App. 4th at 278-280.  At the trial court level, the court found that the named plaintiff lacked standing because his calls were never monitored.  The trial court then allowed discovery of unnamed class members solely to locate potential plaintiffs with standing (i.e., whose calls were actually recorded).  Id.  On appeal, the court upheld the trial court's granting of discovery of unnamed class members because, by definition, such class members would not have knowledge of their claims absent precertification discovery.  Id. at 293.  No such circumstances exist here.

Likewise, in Pioneer, the court permitted disclosure of identifying information of customers who had submitted complaints because those customers, who already had disclosed their identifying information when they submitted their complaints, arguably had a lower expectation of privacy.  40 Cal. 4th at 370-74.  Moreover, and critically, the court noted that the case "involved disclosing neither one's personal medical history or current medical condition nor details regarding one's personal finances or other financial information . . . ," and thus did not raise serious privacy concerns.  Id. at 360.  The court in Belaire-West similarly noted that the contact infomration at issue in that case, "while personal, was not particularly sensitive, as it was contact information, not medical or financial details."  149 Cal. App. 4th at 561-62.  Again, these cases are highly distinguishable from the case here where, beyond mere identifying information, the list of customers sought by Plaintiffs necessarily entails disclosure of highly-sensitive personal and financial information regarding customers' broken promises and amounts owed under contracts with VCI.

Plaintiffs have not demonstrated any reason why the present circumstances warrant deviation from the inherent limitation on precertification discovery of unnamed class members.  Accordingly, the Court should not compel VCI to identify more of its customers, who are differently-situated from Plaintiffs who

were <u>not</u> contractually obligated to VCI for the Vehicle.  Such information is entirely unnecessary for purposes of class certification.

**Interrogatory No. 20:**

Identify (name of entity, address, phone number) each entity which had physical possession of PLAINTIFF'S vehicle from the repossession through the date of sale, and the dates each such entity held possession.

**Response to Interrogatory No. 20:**

VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is vague and ambiguous; and (ii) it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action.

**Supplemental Response to Interrogatory No. 20:**

Without waiving, and subject to, its prior objections, VCI supplements its response to this Interrogatory as follows:  Collateral Recovery Services Inc., 12130 Philadelphia Avenue, Whittier, California 90608; CarsArrive Network, Inc., 1620 South Stapley Drive, Suite 232 Mesa, Arizona 85204; Manheim Auctions, Inc. 1320 N Tustin Avenue, Anaheim, California 92807.

PLAINTIFF'S CONTENTIONS

The response fails to state the dates each entity held plaintiffs' vehicle, as requested by the Interrogatory.

DEFENDANT'S CONTENTIONS

During the meet and confer process, VCI agreed to further supplement its response to this Interrogatory and provide the dates requested.  VCI accordingly requested that Plaintiffs remove this Interrogatory from the Joint Stipulation.

**Interrogatory Nos. 21-22:**

21. For each entity identified in response to the preceding interrogatory, identify all the possible types of fees or charges which PLAINTIFF could have

1  been charged by that entity in order to recover possession of the vehicle, had

2  PLAINTIFF reinstated the CONTRACT (if a fee or charge is contingent on some

3  event, then you may identify the contingency).

4      22.  For each fee or charge identified in response to the preceding

5  interrogatory, state the dollar amount of the fee or charge (if the fee or charge

6  accrues daily, then state the daily rate and from when the charge accrues).

7  **Response to Interrogatory No. 21-22:**

8      VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is

9  vague and ambiguous; (ii) it is compound; (iii) it is overbroad, unduly burdensome

10  and harassing; (iv) it seeks information that is neither relevant nor reasonably

11  calculated to lead to the discovery of admissible evidence in this action; (v) it is

12  incomplete in and of itself; (vi) it purports to require VCI to prepare compilations,

13  abstracts or summaries of documents that have been, or will be, produced in this

14  action; and (vii) it seeks information not known to VCI.

15  PLAINTIFF'S CONTENTIONS

16      The requested information is highly relevant.  Plaintiff contends that the

17  auction houses and repossessors that held plaintiffs' vehicle charged plaintiffs and

18  other class members for various storage, transport, and administrative fees, which

19  were not disclosed in VCI's post-repossession notice.  As stated in Juarez v.

20  Arcadia Financial, Ltd., 152 Cal.App.4th 889 (2007), ""The statute requires that a

21  creditor inform the consumer of any amounts the consumer must pay to the creditor

22  and/or to third parties, and provide the consumer with the names and addresses of

23  those  who are to be paid." Juarez, 152 Cal.App.4th at 904-5.

24      These interrogatories seek VCI's knowledge as to its own agents' charges

25  and fees, imposed on class members during the repossession and reinstatement

26  process.  Plaintiffs believe there were any number of fees which had to be paid, but

27  were not disclosed.  Complaint, ¶ 20(b) and 20(f).  VCI should be compelled to

28

1  state what those fees and charges were.  That information lies in VCI's own files,

2  contained in its contracts with repossession agencies and auctions.

3          DEFENDANT'S CONTENTIONS

4          This Request seeks identification of all fees which "could have been

5  charged" and thus improperly requires VCI to prepare compilations, abstracts or

6  summaries of documents that have been produced in this action and is overly

7  burdensom.  Fed. R. Civ. P. 33(d).  Indeed, VCI already produced its contracts with

8  ARS, Manheim and OpenLane, which contain the information sought by this

9  Interrogatory.  Accordingly, VCI satisfied its discovery obligations and stands on

10 its election under Rule 33(d) to produce documents instead of preparing

11 compilations, abstracts or summaries of documents.

12         Moreover, Plaintiffs cannot require VCI to provide information based on

13 their hypotheses and speculation.  What "could have been charged" requires VCI to

14 determine a complete and exhaustive set of scenarios under which any and all of a

15 variety of fees may be charged.  Such a request is impermissible.  <u>See Garcia</u>, 2012

16 WL 4158142, at *65 ("good cause for discovery cannot arise from mere

17 speculation" and "discovery cannot be ordered on the basis of pure hypothesis").

18

19 **Interrogatory No. 23:**

20         State precisely what costs or expenses the $15 "redemption fee" disclosed in

21 the NOTICE issued to PLAINTIFF compensated YOU for.

22 **Response to Interrogatory No. 23:**

23         VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is

24 vague and ambiguous; (ii) it seeks confidential, proprietary business information

25 that belongs to VCI and/or third parties; (iii) it seeks information that is neither

26 relevant nor reasonably calculated to lead to the discovery of admissible evidence

27 in this action; (iv) it seeks information not known to VCI; and (v) it is

28 argumentative.

1   **Supplemental Response to Interrogatory No. 23:**

2        Without waiving, and subject to, its prior objections, VCI supplements its

3   response to this Interrogatory as follows:  The "redemption fee" is a pass-through

4   cost and does not compensate VCI for anything.

5   PLAINTIFF'S CONTENTIONS

6        The response is evasive and incomplete.  If the fee does not compensate VCI

7   for anything and is a "pass through" cost, then who is passing through the cost?

8   Plaintiffs are entitled to know which third party is assessing this fee, and why.

9        DEFENDANT'S CONTENTIONS

10       VCI has responded to the Interrogatory propounded.  That Plaintiffs do not

11  like the answer is not a proper grounds for a motion to compel.  Glass v. Beer,

12  1:04-CV-05466OWWSMS, 2007 WL 913876, at *11 (E.D. Cal. Mar. 23, 2007)

13  ("Plaintiff may not seek to compel an answer simply because he does not like the

14  answer and would prefer a different one.").  During the meet and confer process,

15  VCI again confirmed that the redemption fee is charged by the local recovery agent

16  and it may vary depending on which local agent is used.  There is no contract

17  between ARS (VCI's contractor) and the local agent that would state an amount the

18  applicable local agent may charge for a redemption fee.

19

20  **Interrogatory No. 24:**

21       State the inclusive dates that it was YOUR policy to disclose to

22  CUSTOMERS with a REPOSSESSION that they would have to pay a $15

23  "redemption fee" if they redeemed their contracts.

24  **Response to Interrogatory No. 24:**

25       VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is

26  vague and ambiguous; (ii) it is overbroad, unduly burdensome and harassing; (iii) it

27  seeks confidential, proprietary business information that belongs to VCI; and (iv) it

28

is not limited to a time period relevant or even proximate to the events at issue in this action.

**Supplemental Response to Interrogatory No. 24:**

Without waiving, and subject to, its prior objections, VCI supplements its response to this Interrogatory as follows:  At all relevant times, anytime VCI is assessed a "redemption fee," it is disclosed in the NOI.

PLAINTIFF'S CONTENTIONS

The response does not answer the question:  during which inclusive dates did VCI charge the fee?

DEFENDANT'S CONTENTIONS

VCI has responded to the Interrogatory propounded.  That Plaintiffs do not like the answer is not proper grounds for a motion to compel.  Glass, 2007 WL 913876, at *11.  Accordingly, VCI continues to object to this Interrogatory.


**Interrogatory No. 25:**

Identify (name, address, phone number) the person whose idea it was to impose the $15 "redemption fee."

**Response to Interrogatory No. 25:**

VCI objects to this Interrogatory on the grounds, among others, that:  (i) it is vague and ambiguous; (ii) it seeks confidential, proprietary business information that belongs to VCI and/or third parties; (iii) it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action; (iv) it seeks information in which non parties have a legitimate expectation and/or right of privacy; and (v) it seeks information not known to VCI.

**Supplemental Response to Interrogatory No. 25:**

Without waiving, and subject to, its prior objections, VCI supplements its response to this Interrogatory as follows:  VCI incorporates its Supplemental Response to Interrogatory Nos. 23 and 24 as if fully set forth.

PLAINTIFF'S CONTENTIONS

The response does not answer the question, i.e. the identity and location of the person whose idea it was to impose this fee.  VCI's responses to Interrogatories 23 and 24 also do not answer the question.

DEFENDANT'S CONTENTIONS

As explained above, this is not a fee imposed by VCI.  It is a pass-through cost from the local recovery agent.  Accordingly, would be no one at VCI whose idea it was to implement this fee.

Dated:  April 12, 2013                     Respectfully Submitted,
                                                        TRUEBLOOD LAW FIRM


                                                        By: _____
                                                             Alexander B. Trueblood

                                                        Attorneys for Plaintiffs
                                                        VARSHA AND SHEETAL SHARMA


Dated:  April 12, 2013                     Respectfully Submitted,
                                                        STROOCK STROOCK & LAVAN LLP


                                                        By: _____
                                                             Brian C. Frontino

                                                        Attorneys for Defendant
                                                        VW CREDIT, INC.